JACK SHOWELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DOROTHY SHOWELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 48153, 48154.   Filed December 16, 1954.

*W. Lee McLane, Jr., Esq.*, for the petitioners.
*Earl C. Crouter, Esq.*, for the respondent.

**OPINION.**

TIETJENS, *Judge:* The only error assigned by the petitioners is the correctness of the respondent's determination that during 1949 each had additional and unreported income of $11,281.83 from wagering operations. The petitioners state that no income was reported from the business of booking bets during 1949 because the yearly total of the daily and weekly net gains was $22,908.88, the total of the daily and weekly net losses was $23,489.97, and the difference, $581.09, represented the net loss sustained during the year in the conduct of that business. They also urge that since the respondent accepted Exhibit 3 as to the gains shown thereon, he also should have accepted it as correctly reflecting the losses indicated thereon. The respondent contends that the records maintained by the petitioner for his wagering business, unlike those maintained for his other business activities and interests, are so meager as not to be susceptible of audit or verification; that he was unable to determine whether losses were sustained as indicated on Exhibit 3; and that on the showing here made none of the amounts shown as losses on that exhibit should be allowed.

In effect the petitioners are contending for the allowance here of wagering losses to the extent of the gains determined by the respondent from that business. The pertinent portion of the Internal Revenue Code of 1939 is set out below.[1]

As we see it, the question resolves itself into one of fact and we think it should properly be decided on the basis of the weight to be given to the evidence adduced. Cf. *H. T. Rainwater*, 23 T. C. 450. With that in mind, our finding of fact is dispositive of the issue—the total net gains of $22,908.88 as determined and accepted by the respondent should be subject to a further deduction of $3,000.

We do not think the petitioners can properly complain, as they have, that the respondent, on the one hand, accepted the net gains as disclosed by Exhibit 3, but on the other hand, disallowed as a deduction the net loss figures disclosed by the same exhibit. After all, the respondent's acceptance of the net gains was tantamount to an allowance of the undisclosed loss figures which were utilized by the petitioners in computing their net gains, so that as a matter of fact the respondent has not disallowed in toto the petitioners' losses. These gain figures, in a sense, were admissions against interest by the petitioners and so were more reliable than the bare "Loss" figures carried in the other monthly columns on the exhibit.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(h) WAGERING LOSSES.—Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.

The reliability of Exhibit 3, however, so far as the loss figures are concerned is more vulnerable. The basic records of which that exhibit is a summary were not available and the totals shown are not subject to accurate verification or audit. The acceptability of the exhibit as proof depends to a large extent on the oral testimony of the petitioner and of Walsh who assisted in its preparation. But such testimony was at best self-serving with respect to the petitioner and Walsh had no firsthand knowledge of the accuracy of the figures read off to him by the petitioner from his slips. Accordingly, we cannot accept the evidence as conclusively proving the full amount of the claimed losses. However, on the basis of that testimony and the other evidence of record, and bearing heavily on the petitioner whose failure to keep reliable records gives rise to the present controversy, we think an additional $3,000 deduction for wagering losses should be allowed.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

———

WITHEY, *J.*, dissenting: Concededly, the petitioners reported nothing in their income tax returns with respect to the wagering business. The reason advanced by them for their failure in this respect is that the yearly total of the daily and weekly net gains was $22,908.88, the yearly total of the daily and weekly net losses was $23,489.97, and the difference of $581.09 represented the net loss sustained for the year in the business. Although unable to determine from any record relating to the business, or from any other source, the amount thereof, the respondent allowed all losses that had been used by petitioner in computing the net gain of $22,908.88 shown in Exhibit 3 and determined that the latter amount represented the income from the business for the year. After allowing certain substantiated deductions, the respondent determined the taxable income from the business for the year to be $22,563.66. The petitioners contend that the latter amount should be offset in full by the allowance of additional losses. Although conceding that no reliable or verifiable records were maintained with respect to the business, and that the evidence offered by petitioners in support of their contention is subject to various infirmities, the majority of the Court, nevertheless, without particularizing, hold that the petitioners have sustained their contention as to the deductibility of additional losses to the extent of $3,000, and that the respondent erred in failing to allow further losses in that amount.

Having heard these proceedings, and being familiar with the record made therein, I am of the opinion that if the record justifies the allowance of any losses in excess of those allowed by respondent, it justifies the allowance of the full amount of losses contended for by peti-

tioners. However, on the record, I would sustain the respondent's determination in its entirety.

Respecting the examination of returns and the determination of tax liability with respect thereto, section 54 of the Internal Revenue Code of 1939 provides that as soon as practicable after the return is filed the Commissioner shall examine it and determine the correct amount of the tax. The various revenue acts from that of 1918 until the enactment of the Code contained a similar or identical provision. Regarding the keeping of records by taxpayers, the 1939 Code contains the following:

SEC. 54. RECORDS AND SPECIAL RETURNS.

(a) BY TAXPAYER.—Every person liable to any tax imposed by this chapter or for the collection thereof, shall keep such records, render under oath such statements, make such returns, and comply with such rules and regulations, as the Commissioner, with the approval of the Secretary, may from time to time prescribe.

(b) To DETERMINE LIABILITY TO TAX.—Whenever in the judgment of the Commissioner necessary he may require any person, by notice served upon him, to make a return, render under oath such statements, or keep such records, as the Commissioner deems sufficient to show whether or not such person is liable to tax under this chapter.

Similar or identical provisions appeared in the various revenue acts from that of 1916, as amended by the Act of October 3, 1917, till the enactment of the 1939 Code.[1]

Pursuant to the authority contained in the above quoted provisions of section 54, the Commissioner in Regulations 103 prescribed the following:

SEC. 19.54-1. **Records and income tax forms.**—Every person subject to the tax, except persons whose gross income (1) consists solely of salary, wages, or similar compensation for personal services rendered, or (2) arises solely from the business of growing and selling products of the soil, shall, for the purpose of enabling the Commissioner to determine the correct amount of income subject to the tax, keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of the gross income and the deductions, credits, and other matters required to be shown in any return under chapter 1. Such books or records shall be kept at all times available for inspection by internal-revenue officers, and shall be retained so long as the contents thereof may become material in the administration of any internal-revenue law.

Identical requirements were prescribed in the regulations under the Revenue Act of 1938 [2] and have been continued to be prescribed in all regulations issued under the 1939 Code subsequent to Regulations 103.[3]

[1] Rev. Act of 1916, as amended by Act of Oct. 3, 1917, sec. 1001; Rev. Act of 1918, sec. 1305; Rev. Act of 1921, sec. 1300; Rev. Act of 1924, sec. 1002 (a); Rev. Act of 1926, sec. 1102 (a); Rev. Act of 1928, sec. 54 (a); Rev. Act of 1932, sec. 54 (a); Rev. Act of 1934, sec. 54 (a); Rev. Act of 1936, sec. 54 (a); Rev. Act of 1938, sec. 54 (a).

[2] Regs. 101, art. 54-1.

[3] Regs. 111, sec. 29.54-1; Regs. 118, sec. 39.54-1.

Since the issuance of Regulations 103, seven revenue acts have been enacted making many changes in the Code, but in none of them was any change or modification made in the above quoted provisions of section 54 pursuant to which the above quoted provisions of section 19.54–1 of the regulations were prescribed. Furthermore, provisions substantially identical with the provisions of section 54 were enacted in section 6001 of the Internal Revenue Code of 1954. In view of the foregoing it appears that the interpretation of section 54 of the 1939 Code as contained in the portion of the regulations in question has received congressional approval and acquired the force of law. *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110; *Wiegand Co.* v. *United States*, 104 Ct. Cl. 111, 60 F. Supp. 464.

In *Federal National Bank of Shawnee*, 16 T. C. 54, petition for review dismissed 191 F. 2d 402, the taxpayer between the time of original trial and the decision by the Tax Court, and preparatory to moving to another location, destroyed all its records with respect to a certain life insurance policy, except those in evidence before the Court. In a second trial, which was pursuant to mandate, the destroyed records were material to a determination of the taxpayer's income from the policy, but the taxpayer was then unable to produce them. We there referred to the requirement of section 54 of the Code that the taxpayer should keep records, and to the provision of the regulations prescribed pursuant thereto, requiring the taxpayer to retain such records "so long as the contents thereof may become material in the administration of any internal-revenue law," and treated that requirement of the regulations as having the force of law. We then said:

Moreover, under *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, a taxpayer "whose inexactitude is of his own making" is to be charged therewith. Surely this idea covers the case of a petitioner which, rather remarkably, destroys, during the pendency of a case, after trial and prior to opinion, the records pertinent thereto and of course pertinent to any retrial. Justice would not be subserved by allowing a taxpayer to escape taxation by such ineptitude. * * *

According to the testimony of the petitioner, his basic records were the slips of paper and tally sheets upon which he made notations identifying to him the bettors and the amounts of bets placed, and upon which he subsequently made notations to indicate whether the bettor lost or won, and, if the latter, the amount to be paid him. These slips and sheets, from which the petitioner's gross income, the amounts paid to bettors, and losses, if any, might be determined if now available, were destroyed by the petitioner after entries were made on the summary statement comprising Exhibit 3 and after all claims, with respect to the games to which such slips and sheets related, had been cleared. Aside from the slips, sheets, and Exhibit 3, the only other

item in the nature of a record made by petitioner was a limited number of checks issued by petitioner in payment to winning bettors. The petitioner stated at the hearing that neither he, nor his accountant, nor his attorney had attempted a reconstructed computation of any of the net losses shown on Exhibit 3 based on his canceled checks. Further, the petitioner was unable at the hearing to state whether the checks related to games on which he sustained a loss or on which he realized a gain.

From what has been said above, it is apparent that petitioner failed to keep and retain such records of his business as was required by law.

Where a taxpayer seeks a deduction, the burden is upon him to prove not only that he is entitled to it but also the amount of it. *Reinecke* v. *Spalding*, 280 U. S. 227. When a deduction is claimed, the Government has the right to demand a full disclosure of the facts on which the claim is based, for otherwise it would be at the mercy of the unscrupulous taxpayer. *O'Laughlin* v. *Helvering*, 81 F. 2d 269. The impossibility of proving the material facts upon which the claim rests does not relieve the taxpayer of his burden of proof. *Burnet* v. *Houston*, 283 U. S. 223.

The petitioner destroyed the data from which the correctness of the claim now made as to losses might be ascertained. His purpose in doing so was to create an excuse for failing to produce it if called on. He now has no independent recollection of the transactions involved in the claimed losses. His testimony shows that during the taxable year he had substantial business interests other than his wagering operations, and that as to those interests he did not keep such incomplete and unverifiable records as were kept for his wagering business. In my opinion, the holding of the majority, under the circumstances presented, renders futile the Code requirements as to the keeping and retention of records by taxpayers and lends encouragement to the maintenance of unverifiable records by unscrupulous taxpayers.

BRUCE, *J.*, agrees with this dissent.