Louis A. Simon v. Commissioner.
Simon v. Commissioner
Docket No. 45136.
United States Tax Court
T.C. Memo 1955-324; 1955 Tax Ct. Memo LEXIS 13; 14 T.C.M. (CCH) 1262; T.C.M. (RIA) 55324; December 13, 1955
*13 1. The amount paid out to winning betters by Badger News Service in each of the years here involved, determined. 2. Amount of deductions properly allowable for expenses and bad debts for the years 1947 through 1950, determined. 3. Respondent's disallowance of deductions for interest admittedly paid by petitioner in each of the taxable years as not being attributable to petitioner's business, sustained. 4. Amount of loss sustained by petitioner in 1947 from gambling operations in Chicago determined and allowed. 5. Additions to tax imposed by respondent under various provisions of the 1939 Code approved in part and disapproved in part. Maurice Weinstein, Esq., 623 North Second Street, Milwaukee, Wis., for the petitioner. Paul Levin, Esq., and Gerald W. Brooks, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax of petitioner and additions thereto for years and in amounts, as follows: Additions Under
Year
Deficiency
§ 291(a)
§ 293(a)
§ 294(d)(1)
§ 294(d)(2)
1947
$34,941.88
$1,747.09
$ 10.00
$2,072.51
1948
10,294.04
514.70
1,164.80
698.89
1949
46,618.39
2,330.92
4,661.84
2,797.10
1950
34,186.78
$8,645.82
1,709.31
3,458.32
2,075.00
Certain *14 assignments of error in the petition upon which this proceeding is based are no longer in controversy. The issues to be resolved are: (1) Whether, in determining petitioner's gross income from wagers, respondent properly disallowed the "pay-outs" made by petitioner for bets lost by him as evidenced by petitioner's books, substituting therefor 88 per cent of the total bets handled so that 12 per cent of such bets were considered to be petitioner's net winnings. (2) Whether respondent erred in his disallowance of certain claimed business expenses. (3) Whether respondent's disallowance of deductions for interest paid by petitioner was proper. (4) Whether respondent properly disallowed a deduction for a loss claimed to have been sustained by petitioner in 1947 in his conduct of a betting office in Chicago. (5) Whether respondent erroneously imposed additions to tax under Section 291(a), 293(a), 294(d)(1) and 294(d)(2) of the Internal Revenue Code of 1939. Findings of Fact The stipulation of facts filed by the parties, with exhibits attached, is adopted and, by this reference, made a part hereof. Additional facts were adduced by oral testimony. The petitioner is Louis A. Simon, a resident *15 of Milwaukee, Wisconsin. Petitioner filed his income tax returns for the years 1947 through 1949 with the then collector of internal revenue for the District of Wisconsin, as follows: Year
Date Filed
1947
March 15, 1948
1948
March 15, 1949
1949
April 17, 1950 On March 15, 1951, petitioner filed with the same collector an unsigned U.S. Treasury Department Form 1040 for the calendar year 1950. During the years involved, petitioner was the owner and operator of The Badger News Service (hereinafter referred to as Badger). Badger's income was derived from three major sources - the operation of a betting office, the publication and sale of a sporting news service known as the "Sports Flash" and the sale of a mimeographing service known as the "Universal Letter Service." The betting business conducted by Badger was operated in an office building in Milwaukee. Such business was not lawful in Wisconsin during the years involved. Most of the bets placed related to horse racing and were received over the telephones in petitioner's betting office. A few other bets were made on baseball, football and other events. The business was conducted essentially on a charge or credit basis. There were two employees *16 in the office of Badger who took the bets over the telephones. When he was in the office, the petitioner also took bets over the telephone. When a customer called in and placed a bet, a written memorandum was made of the transaction, upon which was recorded the identification of the customer, the date and the event. Bets on horse races were entered on a sheet especially designed for the purpose. At the end of the day, when the results of the races were ascertained, this information was transferred to customers' accounts appearing on the backs of certain envelopes in which the loose sheets were placed. Customers were identified on the records by nicknames, first names, initials or numbers. Under its method of operation, Badger accepted the opposite side of the customer's bet and assumed the full risk thereof. Badger did not receive a commission for handling bets and no amount or percentage was deducted from the amount paid to a winning customer. Some bets were "laid off" to limit the risk thereon. The petitioner limited the odds on pay-outs on bets won by the wagerers to 20 to 1 on "win" bets, 8 to 1 on "place" bets and 4 to 1 on "show" bets. He also limited the pay-outs on parlay bets. *17 Otherwise the petitioner paid bets on horse racing based on such odds as were shown by the pari-mutuel machines at the various tracks. One of the aforementioned employees in the Badger office was Marvin Simon, a nephew of petitioner, who maintained the daily records. In addition to his salary, Marvin was paid a bonus for the year 1948 in the amount of $1,900.00 and for the years 1949 and 1950 in the amount of $2,600.00, respectively. Marvin also received a percentage of the income from petitioner's gambling activities in Waukesha. Although this was a separate business, its records were included with those of Badger. The method used to codify the identity of the customers on the records maintained was established in part by petitioner and in part by Marvin. In some instances where petitioner established the code, Marvin did not know the identity of the better. The books and records maintained by Badger consisted of the aforementioned envelopes in which were placed the memoranda of the business for the period involved and on the outside of which was a resume of such business, a cash journal and a ledger. The envelope system was designed and instituted by petitioner's accountant, Myron *18 J. Fromstein, who also maintained the journal and ledger in his office. The envelopes so used were approximately 9 1/2 inches by 12 1/2 inches in size, on both the outsides of which were printed certain columnar forms. On one side, columns were provided for a detailed recording of the "ins" and "outs", "wins" or "losses" for the betting period involved. On the other side, the printed form was so designed as to provide space for accounts receivable and payable as well as cash received and paid out on such accounts, a cumulative balance for old accounts and a cumulative balance for petitioner's individual drawing account. Columns were also provided for an operating statement and balance sheet, which together included a record of the total amount paid out for the period, the amount received, the gross profit or loss, a detailed statement of expenses paid and checks issued, the net profit or loss and a cumulative total of winnings to date. Also included was a statement of the amount of money - currency, silver or checks - on hand and the balance of the accounts and a cumulative balance of winnings to the date of the report. Entries were made in black or red depending upon whether the amount *19 recorded was owing to or by Badger. Usually at the beginning of every month, the envelopes for the preceding month were brought to Fromstein who transcribed the information thereon into the journal and ledger. The foregoing records of petitioner's business were kept on an accrual basis and the income thereof was so reported. These "books" also contain a record of money borrowed by petitioner from various sources. The same sort of codification of the identity of the lenders was used as applied to the identity of betters. There was no written evidence of such loans. Petitioner's records have never been audited or verified. Fromstein checked for mathematical accuracy only. Income realized during the years involved from the publication and sale of the "Sports Flash" and from the "Universal Letter Service" was as follows: 1947
1948
1949
1950
"Sports Flash"
$5,490.00
$5,170.00
$4,170.00
$3,925.00
"Universal Letter Service"
3,531.30
4,332.00
2,690.00
220.00
Petitioner also received during 1947 income from individuals, which income was not recorded on the books, as follows: Name
Amount
Krasno
$ 1,643.50
Abe Katz
3,799.97
Mr. Kelleher
2,000.00
Mrs. Kelleher
12,000.00
Mel Clarke
1,063.55 The above items of income were *20 reported on the petitioner's returns but were wiped out by a claimed deduction of the Chicago loss of $45,440.63. (Vide seq.) During the taxable years petitioner had additional income from gambling at cards and from betting on baseball games and fights, of which gambling transactions petitioner kept no record. The books and records of Badger show net income from wagering in each of the years involved, as follows: 1947
1948
1949
1950
Gross Wager Income
$330,895.35
$283,675.50
$725,612.10
$543,780.75
Gross Wager Disbursed
313,708.25
258,177.30
724,963.90
530,911.95
Net Income from Wagers
$ 17,187.10
$ 25,498.20
$ 648.20
$ 12,868.80
Percentage of Wins to Total
5.2%
9.0%
.09%
2.4%
Play
In his determination, respondent disallowed "pay-outs" for bets lost as reflected on petitioner's books and allowed in lieu thereof "pay-outs" amounting to 88 percent of gross receipts from wagers as reflected on petitioner's books. The remainder he disallowed for lack of substantiation. Respondent thus determined that petitioner's gross profit from wagering, or net wins, during the years involved was as follows: Estimated
Ratio of
Pay-outs
1947
1948
1949
1950
* Wagers ("Ins")
100%
$328,671.05
$274,326.55
$718,187.15
$534,035.55
Less "Outs"
88%
289,230.52
241,407.36
632,004.69
469,951.28
Gross Profit from
12%
$ 39,440.53
$ 32,919.19
$ 86,182.46
$ 64,084.27
Wagers
*21 The respondent disallowed certain business expenses claimed by the petitioner, as follows: Amount
Amount
Year
Claimed
Disallowed
1947
$ 1,601.10
$1,285.84
1948
11,611.10
6,073.92
1949
2,693.60
2,463.57
1950
995.55
862.27
Respondent also disallowed, as not being attributable to petitioner's business, claimed deductions for interest paid by petitioner as follows: Year
Amount
1947
$325.10
1948
341.85
1949
392.12
1950
318.48
In 1947, petitioner operated a betting office in Chicago in which he owned a 75 percent interest. The remaining 25 percent was owned by Eddie Marik. Respondent disallowed for lack of substantiation a claimed loss for this betting business for 1947 in the amount of $45,440.63. At pari-mutuel racing tracks throughout the United States during the years involved, an amount ranging from 10 percent to 16 percent of all bets placed was deducted for the benefit of the racing association and the pertinent taxing authority. The remaining 90 percent to 84 percent was distributed to the winning betters. In the adjoining *22 State of Illinois during the taxable years, either 13 percent or 14 percent was so withheld, depending upon the track involved. On the basis of the foregoing, we find as an ultimate conclusion of fact that the amounts paid out by Badger to winning betters were overstated in its books and records in each of the years 1947 through 1950 by the respective amounts of $4,000.00, $6,000.00, $2,000.00 and $3,000.00. Opinion VAN FOSSAN, Judge: The first issue involves the propriety of respondent's action in disallowing the amount of "pay-outs" made by petitioner, as shown on his books, and allowing in lieu thereof an amount equivalent to 88 percent of the total bets placed with the result that 12 percent of such bets were determined to be petitioner's net winnings. As in other recent cases involving the tax liability of so-called "bookmakers," see H. T. Rainwater, 23 T.C. 450, Morris Nemmo, 24 T.C. 583 (June 30, 1955), the respondent does not contest the accuracy of the gross receipts recorded on the books of Badger and reported by petitioner. In fact, as noted, supra, respondent's determination of such receipts is, for some unexplained reason, in less amount. Respondent has determined, *23 however, that Badger's wagering losses or pay-outs were overstated with the result that petitioner's income was understated on his returns for each of the taxable years. For the taxable years involved, petitioner maintained and has preserved a supposedly complete set of the original records of Badger, exemplary samples of which have been placed in evidence. These records, while not identifying any of the betters, appear, or at least purport, to contain accurate entries of the amounts received and paid out in relation to every bet and the mathematical accuracy thereof is not here questioned. However, respondent complains that, without knowing the identity of the betters with whom petitioner did business, it is impossible for anyone to verify the pay-outs to winning betters, both as to actual fact of payment and as to the amount thereof. In this connection it seems petitioner not only refused to identify all the betters on a list selected at random by respondent from Badger's books, but petitioner also refused to submit a net worth statement from which respondent could proceed to determine his income by means of the so-called net worth method. It is respondent's position, therefore, *24 that he was justified in, and in fact had no alternative to, determining as best he could what he deemed a reasonable amount to be allowed for wagering losses, all factors considered. These factors, it appears, included a consideration of the amount withheld by pari-mutuel operators and of the fact that during his investigation, respondent became aware of certain funds appearing in the checking accounts of petitioner or his wife or used for the purchase of cashiers' checks and drafts, which funds, in his opinion, could not have been drawn out of Badger or the source of which otherwise satisfactorily explained. This latter item, respondent maintains, substantiates his determination in that the amount of such unaccounted for funds was roughly equivalent to 12 percent of the gross amount of bets placed. We fully appreciate the difficulties encountered by the respondent in his investigation when he attempted to audit and verify petitioner's records and to determine therefrom the amount of taxable income realized by petitioner from his illegal business. Particularly is this true when we note that the identity of the betters recorded thereon could not be independently ascertained therefrom *25 and, for the most part, was withheld from him by petitioner. Petitioner's own accountant agreed in his testimony that the accuracy of the records could not be verified as to amounts received and paid out on bets. Even so, on the basis of this record, respondent's determination is not fully warranted. The instant facts conclusively show that there was no relation between the percentage of the petitioner's winnings and that withheld by pari-mutuel operators. Cf. H. T. Rainwater, supra; Morris Nemmo, supra.Further, the source of the funds appearing in the checking accounts of petitioner and his wife and questioned by respondent has been shown to have been, at least in substantial measure, from personal borrowings. The difficulty of the task faced by respondent, which task was made even more difficult by petitioner's refusal to identify more than & handful of the betters appearing on his records and by mere suspicion on respondent's part that those records do not accurately reflect petitioner's income, is insufficient reason, in our opinion, for the adoption of the percentage of winnings determined by the respondent in view of evidence on this record showing it to be arbitrary and *26 excessive. At this juncture it is to be noted that of the betters identified by petitioner, respondent made no attempt to seek out more than a few, each of whom, although cooperative, was, because of his own failure to maintain records, unable to give any information as to the amount paid to him by petitioner or to state more than that he had from time to time bet with petitioner and, on occasion, had won. Had respondent pursued his investigation further, both as to pay-outs and the sources of the funds shown to have been borrowed, perhaps he would have met with more success. Nevertheless, it does not necessarily follow that petitioner's books and records clearly reflect his income. Books and records are not self-proving as to their own accuracy. Moreover, as we view them, petitioner's records were easily susceptible to being manipulated so as to distort the amount actually paid out to winning betters. In fact, Marvin's testimony is admissive of such. Further, the very fact of petitioner's persistent refusal to divulge the identity of all the betters gives rise to the logical inference that such may have been, and probably was, done, if for no other reason than, to cover certain nondeductible *27 payments. Wherefore, we have invoked the so-called Cohan rule, see Cohan v. Commissioner, 39 Fed. (2d) 540, and bearing heavily on petitioner whose failure to keep records with information subject to verification or with adequate controls was his own fault, we have determined that Badger's wagering losses were overstated in each of the years 1947 through 1950 by the amounts of $4,000.00, $6,000.00, $2,000.00 and $3,000.00, respectively. We have so found as a fact and, accordingly, here so hold. The next question involves respondent's disallowance of certain portions of the aggregate amounts claimed by petitioner in each of the years before us for expenses and bad debts. It is petitioner's position that each item of expense claimed, as well as each debt and the write-off giving rise to the claimed deduction for bad debts, appears in his books and records as at the date each was respectively incurred or written off; that respondent has not shown such entries to be incorrect or false; and that, therefore, he should be allowed the full amount thereof. Respondent does not deny the fact of such entries nor that some of the expenses so reflected might properly have been incurred as ordinary *28 and necessary expenses of petitioner's business, but, for lack of any substantiating evidence thereof, he has appropriated the Cohan rule (heretofore assumed to be available only for the use of the Court), and, in some instances, would allow only 10 percent of the amounts so recorded. As to the deductions claimed for bad debts in the years 1947, 1948 and 1950, respondent points out that such debts were uncollectible by legal action and had no value when created and that, therefore, petitioner should be allowed no deduction therefor. While it be true that such debts were, under the statutes of Wisconsin, void when incurred, see Wisconsin Statutes, Title XXXII, Ch. 348, §§ 348.16, 348.172, we do not deem it necessary to rule upon the point raised by respondent since respondent in his determination has allowed a substantial portion of the amount claimed as a deduction for bad debts in the year 1948. Considering all the evidence bearing upon the items here in controversy, we have concluded that petitioner should be allowed deductions for expenses, including bad debts where applicable, in aggregate amounts of $746.91, $6,486.18, $1,000.24 and $417.70 in the years 1947 through 1950, respectively. *29 Cohan v. Commissioner, supra. Accordingly, we so hold. The next item in controversy is respondent's disallowance of certain claimed deductions for interest paid in each of the taxable years. Respondent does not deny that such interest payments were, in fact, made by petitioner, but respondent has disallowed them as a factor in computing petitioner's adjusted gross income, as defined in Section 22(n) of the 1939 Code, for each year as not being attributable to petitioner's business. In computing petitioner's net income for these years, respondent has allowed the standard deduction provided in Section 23(aa) of the 1939 Code in lieu of any personal expense deductions. This being true, petitioner is entitled to no deduction for such interest paid unless it appears that the interest was paid in connection with his business, and petitioner does not argue otherwise. The short answer to the question thus posed is that petitioner, upon whom rests the burden of proving such interest payments to have been expenses of his business rather than personal expenses, Louis Boehm, 35 B.T.A. 1106, has failed to sustain that burden. In fact, petitioner has offered no probative evidence of any nature *30 in refutation of respondent's determination. Respondent is therefore sustained as to this issue. The next question involves respondent's disallowance for lack of substantiation of a deduction for a loss claimed by petitioner to have been sustained in 1947 in the operation by him of a betting office in Chicago. That petitioner carried on such gambling operation in Chicago in 1947 is clearly established in the record. Moreover, the preponderance of the evidence is to the effect that this activity resulted in a net loss to petitioner. His share of such loss, petitioner maintains, amounted to $45,440.63. To substantiate this amount petitioner has offered in evidence the original work sheets of his accountant on which appear the amount won or lost each day as called off to the accountant by petitioner from a notebook which had been maintained by Marik containing notations as to the result of each day's activity. This notebook was not put in evidence and is no longer available. Petitioner has also introduced a monthly recapitulation of wins and losses entered on the work sheets. The factual situation with which we are here confronted is quite similar to that in the recent case of Jack Showell, 23 T.C. 495, *31 in that here, as there, it appears that the daily records kept of the bets as they came in each day were destroyed each night after checking with the betters and obtaining a balance, and a notation made of the daily winnings or losses. These, it would seem, are the notations appearing in the notebook and which were read off to the accountant by petitioner in preparation of the aforementioned exhibits. Futther, these notations were apparently the net result of each day's operation, as was the case in Showell. The character of the supporting evidence as to this item is not such as to command full credence. We cannot accept it as accurate and conclusive. Therefore, doing the best we can with the evidence before us and exercising our best judgment in the premises, we have determined that petitioner's loss sustained in 1947 on the Chicago operation was in the amount of $ 8, 76.25. Cohan v. Commissioner, supra. This amount will be allowed as a deduction against petitioner's gross income from the gambling activity of Badger. Jennings v. Commissioner, 110 Fed. (2d) 945. See also Skeeles v. United States, 95 Fed. Supp. 242. There remains for consideration respondent's imposition of additions *32 to tax in each year under various provisions of the Internal Revenue Code of 1939. Having determined that petitioner failed to file a return for the year 1950 as prescribed by law, respondent would impose a 25 percent addition to tax provided in Section 291(a) of the 1939 Code. The facts found on this record show that on March 15, 1951, petitioner filed with the then collector for the district of Wisconsin, an unsigned U.S. Treasury Department Form 1040 for the calendar year 1950, purporting to be his return for such year. This action, however, does not constitute the filing of a return within the meaning and intendment of the statute even though it be treated as such by the collector with whom filed and a tax paid. Theodore R. Plunkett, 41 B.T.A. 700, affd. 118 Fed. (2d) 644. For failure to file a return, such failure not being due to reasonable cause, the 25 percent addition is mandatory. Respondent's imposition thereof is therefore approved. Respondent also seeks to impose for each of the years involved the so-called 5 percent penalty provided in Section 293(a) of the Code of 1939 for negligence or intentional disregard of rules and regulations. It is our view, however, that *33 the imposition of such addition to tax is not justified except for the year 947, in which year petitioner, operating in Chicago, presented inadequate records. For the years 1948, 1949 and 1950, therefore, respondent's action is vacated. The additions to tax provided by Section 294(d)(1) and (2), relating to estimations of tax and payments with respect thereto, are, under the circumstances found on this record, mandatory and respondent's imposition thereof is approved. G. E. Fuller, 20 T.C. 308; see also Conference Report, H. Rept. No. 510, 78th Cong., 1st Sess., p. 56. Decision will be entered under Rule 50. Footnotes
*. It is noted that the gross amount of bets placed as recorded on Badger's books in each year exceeds such amount as determined by respondent. This discrepancy is unexplained in the record.↩