Haimovitz Realty Corporation, Inc. v. Commissioner.
Haimovitz Realty Corp. v. Commissioner
Docket No. 30457.
United States Tax Court
T.C. Memo 1956-16; 1956 Tax Ct. Memo LEXIS 280; 15 T.C.M. (CCH) 85; T.C.M. (RIA) 56016; January 20, 1956
*280 E. O. Palermo, Esq., 1111 Wallace S. Building, Tampa, Fla., and H. H. Baskin, Jr., Esq., for the petitioner. Newman A. Townsend, Esq., and Hubert E. Kelly, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This is a related proceeding to those in Paul Haimovitz, Docket No. 15929, et al., decided by Memorandum Findings of Fact and Opinion filed this day [T.C. Memo. 1956-15]. Respondent determined a deficiency of $7,430.13 in income tax and a delinquency penalty of $2,185.43 for petitioner's taxable period July 18, 1946 to June 30, 1947. Petitioner conceded one issue at the hearing and respondent conceded five issues - including the delinquency penalty - on brief. The two remaining issues are the correct taxable income realized by petitioner from sales of real estate and from collections on certain mortgages. Findings of Fact Some of the facts have been stipulated and are hereby found. Petitioner is a corporation organized under the laws of Florida, with its principal place of business in Tampa. It was incorporated by Ben Haimovitz on May 14, 1946, and was authorized to issue 100 shares of no-par value common stock. On *281 or about June 11, 1946, and during July and August 1946, Ben conveyed certain real estate, notes, mortgages, and real estate sales contracts to petitioner. At the date of transfer, the fair market value of the properties so conveyed was $158,678.73, and there were outstanding and unpaid real property taxes of $6,643.94 due on the properties. The corporate organization was effected on or about June 12, 1946. As consideration for these conveyances, Ben was entitled to receive 40 shares of the authorized stock. He arranged for the stock, which belonged to him in toto, to be issued 10 shares to himself and 5 shares each to S. Herman Rosenberg, Florence H. Rosenberg, Paul Haimovitz, Mary V. Haimovitz, Ethel Haimovitz Krieger and David Krieger. The persons to whom this stock was issued, with the exception of Ben, paid no monetary consideration to either Ben or petitioner for their respective shares. When issued, the stock of petitioner had a fair market value of $3,823.62 per share. At the meeting of petitioner's board of directors held on July 3, 1946, Ben was elected president, Florence, vice president, Paul, treasurer, and Herman, secretary. Since Ben's death on March 2, 1947, Herman *282 and Paul have been petitioner's principal officers. On December 15, 1947, petitioner's income tax return for the taxable period July 18, 1946 to June 30, 1947 was filed with the collector of internal revenue for the district of Florida. During this taxable period, petitioner sold real property, the description and sales price of which was as follows: Sales
Property Sold
Price
Lots 1 and 2, Block 7, Sunset Addition
$ 150.00
Lots 10 and 12, Block 47, Tampa Over-
look Subdivision
300.00
Lot 4, Block 67, Tampa Overlook Sub-
division
150.00
Lot 49, Tulsa Heights Subdivision
2,500.00
Lot 46, Tulsa Heights Subdivision
325.00
Lot 33, Tulsa Heights Subdivision
325.00
Lots 6 and 7, Block 13, Ilexhurst Sub-
division
1,145.30
Lots 1 and 2, Block 50, Tampa Over-
look Subdivision
450.00
Lot 2, Block 20, Tampa Overlook Sub-
division
150.00
Lots 17 and 18, Block 19, Tampa Over-
look Subdivision
300.00
Lots 11 and 12, Block 31, Tampa Over-
look Subdivision
450.00
Lot 31, Tulsa Heights Subdivision
350.00
Total gross income from sale of
real property
$6,595.30 The lots in Tulsa Heights Subdivision had cost $44 per lot and the lots in Tampa Overlook *283 Subdivision $7 per lot. Lots 6 and 7, Block 13, Ilexhurst Subdivision, were acquired by Ben by two deeds dated October 24, 1940; there were $3 in revenue stamps on each deed. Petitioner constructed a house on Lot 49, Tulsa Heights Subdivision, during the taxable period involved with materials that it purchased from Belmont Lumber Company. The cost of constructing the house was $1,240.16. Petitioner's records of eight of the above sales show the selling price, down payment, monthly payments, amount of interest, location, owner and balance due. There were no houses on these eight lots at the time of their acquisition by petitioner, and only one house, the one on Lot 49 of Tulsa Heights, was built by petitioner. The sale of Lot 49 of Tulsa Heights Subdivision was effected by an "Agreement for Deed." Each of these eight sales was effected by this same type of agreement. The realtors in the Tampa area sell, assign and otherwise trade in these instruments at a discount of 10 per cent of their face value. On the back of a typical "Agreement for Deed" used by petitioner appears the following certificate: "I HEREBY CERTIFY, that on this * * * day of * * * A.D. 19 * * *, before me personally *284 appeared Paul Haimovitz and S. Herman Rosenberg respectively President and Secretary of Haimovitz Realty Corp. Inc. a corporation under the laws of the State of Florida, to me known to be the persons described in and who executed the foregoing conveyance to * * * and severally acknowledged the execution thereof to be their free act and deed as such officers, for the uses and purposes therein mentioned, and that they affixed thereto the official seal of said corporation, and the said instrument is the act and deed of said corporation." There also appears the following language with respect to recordation: "Agreement for Deed (FROM CORPORATION) To Dated , 19 Filed in the office of Clerk of the Circuit Court of the County of , State of Florida, on the day of , A.D. 19 , and recorded in Book , on Page . Clerk Circuit Court." Respondent determined that the profit realized by petitioner from the sale of real estate was includible in full in its income for the taxable period involved. There were no opening entries on petitioner's books of account which reflected the cost of real property sold because the property had been transferred to petitioner by Ben and the question of *285 what his specific cost would be was then undetermined and was the subject matter of litigation. Prior to the organization of petitioner, Ben purchased for investment, at a discount of at least 10 per cent, and often-times higher, 22 mortgages with a total value of $30,240.19. He held these mortgages until the organization of petitioner, at which time he transferred to it the uncollected balance due on all of these mortgages. During the taxable period involved, petitioner collected $8,344 on the uncollected balances of these mortgages. Respondent determined that petitioner realized taxable income of $834.40, equal to 10 per cent of the total amount of the collections, by reason of the collections it made on these mortgages. There is nothing in petitioner's records which would identify the make-up of this adjustment made by respondent. Petitioner's return for the taxable period involved was prepared on the cash basis of accounting by a certified public accountant who has been petitioner's accountant since its inception. No balance sheet was attached to petitioner's return and it was impossible to prepare a balance sheet from petitioner's books which contained no opening entries to *286 show the assets with which it began business. The first summary posting was made in July 1946 but there were still no opening entries on petitioner's books of account at the time of hearing. No income from sales of real estate was disclosed on petitioner's return. The profit which petitioner realized from the sale of real estate during the taxable period involved and which is properly includible in its income for that period is as follows: Property Sold
Basis
Sales Price
Profit
Lots 1 and 2, Block 7, Sunset Addition
$ 25.00
$ 150.00
$125.00
Lots 10 and 12, Block 47, Tampa Overlook Sub-
division
20.80
300.00
279.20
Lot 4, Block 67, Tampa Overlook Subdivision
8.70
150.00
141.30
Lot 49, Tulsa Heights Subdivision
1,287.02
* 2,250.00
962.98
Lot 46, Tulsa Heights Subdivision
46.86
* 292.50
245.64
Lot 33, Tulsa Heights Subdivision
46.86
* 292.50
245.64
Lots 6 and 7, Ilexhurst Subdivision
600.00
1,145.30
545.30
Lots 1 and 2, Block 50, Tampa Overlook Subdivision
20.80
* 405.00
384.20
Lot 2, Block 20, Tampa Overlook Subdivision
8.70
* 135.00
126.30
Lots 17 and 18, Block 19, Tampa Overlook Sub-
division
20.80
* 270.00
249.20
Lots 11 and 12, Block 31, Tampa Overlook Sub-
division
20.80
* 405.00
384.20
Lot 31, Tulsa Heights Subdivision
46.90
* 315.00
268.10
*287 During the same period petitioner also realized taxable income from collections on mortgages in the amount of $834.40. Opinion It now being agreed by the parties that petitioner was created in a tax-free organization, the basis of the real property sold by it has been found in conformity with the oral stipulation of the parties. The only question which remains with respect to these sales is whether or to what extent the eight contract sales resulted in taxable income in the year they were executed. We have found in accordance with the evidence and petitioner's request that the eight contract sales were represented by instruments captioned "Agreement for Deed." The only resistance to respondent's determination lies in petitioner's assertion that these contracts were not marketable and therefore are to be treated in accordance with our decision in Nina J. Ennis, 17 T.C. 465. Uncontradicted testimony, however, establishes that these instruments were readily transferable, had a fair market value and passed freely in commerce. Arthur E. Wood, 25 T.C. - (December 14, 1955). Inasmuch as the *288 same testimony indicates that these instruments were transferred at a discount of 10 per cent of face value, the net profit taxable to petitioner upon the execution of these agreements has been reduced by that amount. Respondent has determined that 10 per cent of the collections made by petitioner on mortgages transferred to it by Ben represent taxable income. We do not find this to be arbitrary. The evidence is that the mortgages were bought at a discount of at least 10 per cent, and realization of this difference upon collection of the mortgages constitutes ordinary income. Arthur E. Wood, supra. Any inexactness in the computation resulted primarily from the inadequacy of petitioner's records and this combined with petitioner's failure to introduce any evidence makes it equally impossible for us to find error in the determination. See Estate of Henry Wilson, 2 T.C. 1059, 1086; Jack Showell, 23 T.C. 495. Accordingly, we approve respondent's actions. Decision will be entered under Rule 50. Footnotes
*. Reduced 10 per cent to reflect market value of contractual obligation.↩